LAW OFFICE OF SANDRA D. PARKER
110 East 59th Street, 22nd Floor
New York, NY 10022
(212) 317-2883
Sandra D. Parker
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
AYANA F. MUMIN,

                            Plaintiff,

          -against-

 

SALESFORCE.COM, INC.

                          Defendant.
-----------------------------------------------------x

**COMPLAINT AND
JURY DEMAND**

23 CV 11134

      Plaintiff, Ayana F. Mumin, for her Complaint against the Defendant

Salesforce.com, Inc., respectfully alleges as follows:

<u>JURISDICTION AND VENUE</u>

      1.     This is an action for declaratory judgment, injunctive relief and damages

instituted against the Defendant, for unlawful employment practices and employment

discrimination, based on Plaintiff's religion and religious beliefs, pursuant to the Civil

Rights Act of 1964 (as amended), 42 U.S.C.§§ 2000e *et seq*. (Title VII), the New York

State Human Rights Law, NY Exec. L. §§ 290 *et seq*., (NYSHRL), and the New York City

Human Rights Law, NYC Admin.  Code §§8-101 *et seq*., (NYCHRL), and to redress the

deprivation of Plaintiff's rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution, pursuant to the Civil Rights Act of 1871 (as amended), 42 U.S.C. § 1983.

2.      Jurisdiction over the subject matter of this Complaint is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This Court's pendent jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a). Plaintiff further invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      The venue of this action is properly placed in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), and 42 U.S.C. § 2000e-5(f).

4.      Plaintiff has satisfied the procedural requirements of Title VII, prior to commencement of this action.

5.      On March 11, 2022 Plaintiff filed charges with the Equal Employment Opportunity Commission (EEOC), alleging that the City of New York, the New York City Department of Correction and Salesforce.com, Inc. subjected her to discriminatory treatment, in the terms and conditions of employment, based on her religion, religious beliefs and gender.

6.      On or about September 29, 2023, the EEOC issued a Notice of Right to Sue with respect to the charges Plaintiff asserted against Defendant Salesforce.com, Inc. (Salesforce).

7.      Plaintiff commenced this action for violation of Title VII against the

2

Defendant within ninety (90) days of her receipt of the EEOC Notice of Right to Sue.

<u>PARTIES</u>

8.      Plaintiff Ayana F. Mumin  is a female African American former employee of the City of New York and the New York City Department of Correction (DOC).

9.      Plaintiff  observes and practices the Islamic religion.

10.     Plaintiff is a practicing Muslim.

11.     Upon information and belief, at all times relevant herein the City of New York was and is a municipal corporation, organized and existing pursuant of the laws of New York State.

12.     Upon information and belief, at all times relevant herein, the DOC was and is an agency of the City of New York, created and existing pursuant to the New York City Charter, Article 25 and § 621, and Chapter 1 of Title 9 of the New York City Administrative Code.

13.     At all times relevant Plaintiff was an 'employee' of the  City of New York and DOC within the meaning of Title VII, the NYSHRL, and the NYCHRL.

14.      At all times relevant herein, the City of New York and DOC were Plaintiff's employers within the meaning of 42 U.S.C. § 2000e(b), the NYSHRL, and the NYCHRL.

15.     Upon information and belief, at all times relevant herein, Defendant Salesforce was and is a corporation organized and existing pursuant to the laws of the State of Delaware, with offices located at 1095 Avenue of the Americas, New York, New York

3

10036.

16.     Upon information and belief, at all times relevant herein, the Defendant Salesforce conducted and continues to conduct business in the State of New York, County of New York.

17.     The conduct and actions of the Defendant Salesforce complained of herein, took place and were conducted in the State of New York, County of New York.

18.     Upon information and belief, at all times relevant herein, Defendant Salesforce entered into a contract with the City of New York and the DOC (collectively referred to as the City) to provide certain services and did provide certain services to the City in connection with the appeals filed by DOC employees, who were denied an accommodation, exempting them from the City of New York's requirement that they obtain the COVID vaccine (COVID vaccine mandate or vaccine mandate).

19.     Upon information and belief, at all times relevant herein, Defendant Salesforce, pursuant to the contract with the City, reviewed and made the determination whether to grant or deny the appeal of DOC employees, whose request for an accommodation from the COVID vaccine mandate had been denied by the City.

20.     At all times relevant herein, the City delegated to Salesforce their authority to determine the appeal of DOC employees, whose request for accommodation from the COVID vaccine mandate had been denied by the City.

21.     Pursuant to the foregoing delegation of authority, Salesforce purported to

review and subsequently render a decision on the appeal of DOC employees, whose request

from an accommodation from the COVID vaccine mandate had been denied by the City.

22.     Defendant is sued, pursuant to Title VII for violation Plaintiff's rights based

on her religion and religious beliefs.

23.     Defendant is sued for depriving Plaintiff of her civil rights, under color of

state law, based on her religion and religious beliefs in violation of 42 U.S.C. §1983.

24.     Defendant is sued for engaging in unlawful employment practices and

discrimination, based on Plaintiff's religion and religious beliefs in violation of the

NYSHRL and the NYCHRL.

25.     During Plaintiff's employment with the City, the City of New York

announced in or about October 2020, that their employees including those employees

working for DOC would be required to obtain the COVID 19 vaccination, in order to

continue working.

26.     The City further announced in or about November 2020, that their

employees, including those employees working for DOC could submit requests based on

their religion, religious beliefs or medical conditions, for an accommodation or exemption

from the vaccine mandate.

27.     During Plaintiff's tenure with the City, DOC employees including

Plaintiff submitted to the City and Defendant Salesforce, requests for accommodations or

exemptions from the vaccine mandate, based on their religion or religious beliefs.

28.     During Plaintiff's tenure with the City, the City and Defendant Salesforce purportedly reviewed and then rendered decisions with respect to requests of DOC employees, including Plaintiff's request for an accommodation, from the vaccine mandate based on their religion and religious beliefs.

29.     Following their purported review of the requests of DOC employees, including Plaintiff's request for an accommodation from the vaccine mandate based on religion or religious beliefs, the City and Defendant Salesforce denied each and every such request for a religious accommodation.

30.     Following the denial of those requests for a religious accommodation, the City placed said employees, including Plaintiff,  on Leave Without Pay and subsequently terminated their employment.

31.     The City and Defendant Salesforce denied each and every such request of the DOC employees, including Plaintiff's request for a religious accommodation from the vaccine mandate, despite the fact that there existed a reasonable accommodation from the vaccine mandate that did not cause and which the City admitted did not and would cause the DOC undue hardship.

32.     During Plaintiff's tenure with the City, DOC employees submitted to the City and Defendant Saleforce, requests for accommodations or exemptions from the vaccine mandate based on their medical conditions.

33.     During Plaintiff's tenure with the City, the City and Defendant Salesforce

reviewed and rendered decisions on requests of DOC employees for accommodations from the vaccine mandate based on their medical conditions.

34.    Unlike the case with the religious accommodation requests, the City and Defendant Salesforce did not deny or fail to grant all such requests for medical accommodations from the vaccine mandate, but instead granted every and every such request.

35.    Unlike the case with the religious accommodation requests, the City and Defendant Salesforce granted each and every such medical accommodation requests, permitting unvaccinated DOC employees to continue working and performing duties that brought them into direct contact with the inmate population and the public.

36.    The City and Defendant Salesforce granted such DOC employees' requests for medical accommodations, permitted such unvaccinated DOC employees to continue working and performing their duties as Captains, Corrections Officers and in other positions, without any modification of their duties, responsibilities and assignments.

37.    The conduct of Defendant Salesforce with respect to and the treatment of such requests for medical accommodations was the opposite of the treatment it accorded Plaintiff's requests and the requests of such other DOC employees for a religious accommodation, rejecting their requests for a religious accommodation.

38.    The Defendant Salesforce engaged in the foregoing conduct and subjected Plaintiff and other DOC employees to above treatment because of its religious based

discriminatory animus directed against Plaintiff and other DOC employees.

FACTS

39.     The City employed Plaintiff from in or about November 2005 until

February 2022, when the City wrongfully terminated Plaintiff's employment.

40.     During her employment with the City, Plaintiff performed all duties to which

she was assigned in an exemplary manner.

41.     The City employed Plaintiff in the position of Correction Officer

from on or about November 3, 2005 until on or about January 1, 2014, assigning her work

at the Rose M. Singer Center, a facility of DOC which housed incarcerated persons or

inmates.

42.     From in or about January 2014 through in or about 2016, Plaintiff held the

position of Correction Officer/Medical Support Team Leader in the Applicant Investigations

Unit of DOC.

43.     In or about July 2015 Plaintiff earned the promotion of Captain.

44.     Following Plaintiff's promotion to the title and position Captain, the City

assigned Plaintiff to work as Captain-Transitional Restorative Unit Supervisor at the Robert

N. Daveron Complex (RND Complex), one of DOC's facilities, which houses inmates on

Rikers Island.

45.     Plaintiff's next assignment, following her promotion to the position and

title of Captain was Captain-Mentor Supervisor at the RND Complex.

8

46.     On or about November 11, 2020, while working as Captain-Mentor Supervisor at the RND Complex, Plaintiff suffered a job related injury to her right knee.

47.     As a result of the job injuries Plaintiff sustained on or about November 11, 2020, the City determined that she was not medically fit to perform her full duties of Captain, and assigned Plaintiff to work in the Health Management Division of the DOC in or about May 2021.

48.     The City assigned Plaintiff to work as Captain-Supervisor/Tour Commander of the Health Management Division Unit.

49.     Plaintiff worked in Health Management Division (HMD) as Captain-Supervisor/Tour Commander from in or about May 2021 until on or about January 2, 2022, when the City placed Plaintiff on Leave of Without Pay, and subsequently terminated her employment on or about February 14, 2022.

50.     As Captain-Supervisor/Tour Commander of the HMD, Plaintiff supervised approximately 20 uniformed employees or correction officers.

51.     Plaintiff's duties as Captain-Supervisor Tour Commander of the HMD also included supervision of the medical staff who worked at the HMD under a contract with the City, to provide medical services to DOC.

52.      Plaintiff's duties as Captain-Supervisor/Tour Commander of HMD also involved creating spreadsheets and reports, and compiling data regarding uniformed and non-uniformed employees of DOC, who reported sick.

53.     None of the duties Plaintiff performed and was required to perform as Captain-Supervisor Tour Commander in HMD, required Plaintiff to have contact with the DOC inmate population or the public.

54.     Plaintiff's work in HMD and the duties she performed as Captain-Supervisor Tour Commander of HMD did not take her into contact with the DOC inmate population or the public.

55.     Plaintiff and the HMD staff which Plaintiff supervised were all assigned and worked in individually separated cubicles, with each cubicle separated by wall partitions.

56.     While still assigned as Captain-Supervisor Tour Commander of HMD, on or about July 7, 2021, Plaintiff underwent knee surgery and went on medical leave.

57.     The City did not change Plaintiff's assignment to work in HMD while she was on medical leave.

58.     In or about August 2021, while Plaintiff was on medical leave, the City of New York announced that their employees, including DOC employees had to obtain the COVID vaccine, or alternatively undergo weekly COVID testing and submit weekly negative PCR test[1] results, in order to continue working for the DOC.

59.     Thereafter, in or about October 2021, while Plaintiff was on medical leave, the City of New York announced that all City of New York employees, including those working

_____

[1]     The PCR test or COVID-19 RT-PCR Test is designed to detect the virus that causes COVID-19.

for DOC would be required to be vaccinated against the corona virus.

60.     The DOC also announced in or about October 2021,  that it would review and determine requests from employees, who wished to be exempt from the vaccine mandate, based on their medical condition, their religion or religious beliefs, requiring employees who requested an accommodation to complete a form entitled "Correction Department of the City of New York-Request For A Reasonable Accommodation" (Request for Accommodation Form).

61.     The City required Plaintiff and other employees who requested an accommodation, to submit the completed Request for Accommodation Form online.

62.     On or about October 22, 2021, while Plaintiff was on medical leave, as a result of her right knee surgery, Plaintiff submitted a completed Request for Accommodation Form, requesting a religious accommodation or exemption from the COVID vaccine mandate, based on her Islamic religion, which prohibits her from being vaccinated against all conditions, ailments and impairments, including the corona virus.

63.     The City did not meet with Plaintiff nor did they make themselves available to answer questions, Plaintiff had regarding the process involved in requesting and obtaining an accommodation.

64.     At the time that Plaintiff submitted the Request for Accommodation Form, the City and Defendant Salesforce were aware that Plaintiff was assigned to work in HMD, as a result of her job related injury and that by virtue of that assignment, Plaintiff did

not have any contact with inmates or the public.

65.     At the time that Plaintiff submitted the Request for Accommodation

Form, the City and Defendant Salesforce were aware that Plaintiff was on medical leave,

was assigned to work restricted duty in HMD, and that by virtue of that assignment, Plaintiff

did not have any contact with inmates or the public.

66.     At the time that Plaintiff submitted her request for a religious

accommodation, the City and Defendant Salesforce were aware that since in or about May

2021, Plaintiff  had not worked at the Rikers Island facility where inmates are housed, or at

any other DOC facility that housed inmates.

67.     At the time that Plaintiff submitted her request for a religious

accommodation, the City and Defendant Salesforce were aware that since in or about May

2021, Plaintiff had not worked with the DOC inmate population.

68.      On or about November 8, 2021, approximately two weeks after Plaintiff

completed and submitted her request for a religious accommodation from the COVID

vaccine mandate, and while her accommodation request was pending, the City and

specifically Vincent Schiraldi (Schiraldi), the then Commissioner of DOC, issued Teletype

Order No. HQ-02642-0 to all DOC employees, entitled "Reasonable Accommodations &

NYC Workforce Vaccine Mandate" (the Reasonable Accommodation Teletype Order or

Teletype Order).

69.     Schiraldi in the Teletype Order, among other things, urged DOC employees

who wished to be exempt from the vaccine mandate to submit their requests for an

accommodation by November 23, 2021.

70.    Schiraldi further stated in the Teletype Order that

> **THE ONLY ALLOWABLE ACCOMMODATION
> FROM THE VACCINE MANDATE THAT WILL
> NOT CAUSE UNDUE HARDSHIP AND/OR
> DISRUPTION TO THE DEPARTMENT IS WEEKLY
> TESTING AND SUBMISSION OF NEGATIVE PCR
> RESULTS.**
>
> (Emphasis supplied).

71.    Neither Schiraldi nor the City, rescinded, changed or amended the Reasonable

Accommodation Teletype Order, which declared that "weekly testing and submission of

negative PCR results" was the accommodation from the vaccine mandate that would "not

cause [the DOC] undue hardship."

72.    The Teletype Order declaring that "weekly testing and submission of negative

PCR results" was the accommodation from the vaccine mandate that would not "cause [the

DOC] undue hardship," was in effect and remained in effect during the time Plaintiff

applied for a religious accommodation from the Covid vaccine mandate.

73.    The Reasonable Accommodation Teletype Order declaring that "weekly

testing and submission of negative PCR results" was the accommodation from the vaccine

mandate that would not "cause [the DOC] undue hardship," continued to be in effect and

remained in effect, during the time the City reviewed and denied Plaintiff's application for a

religious accommodation from the Covid vaccine mandate.

13

74.     The Teletype Order declaring that "weekly testing and submission of negative PCR results" was the accommodation from the vaccine mandate that would not "cause [the DOC] undue hardship," continued to be in effect and remained in effect, during Plaintiff's appeal and Salesforce's denial of her appeal of the City's decision to deny her request for a religious accommodation.

75.     Defendant Salesforce was aware of the Teletype Order and that it remained in effect when Plaintiff requested an accommodation from the vaccine mandate, when Plaintiff appealed the denial of her request for an accommodation, and when Defendant Salesforce denied Plaintiff's appeal of the decision denying her request for an accommodation.

76.     The Teletype Order declaring that "weekly testing and submission of negative PCR results" was the accommodation from the vaccine mandate that would not "cause [the DOC] undue hardship," continued in effect  and remained in effect on and after February 2023, when the City of New York rescinded the Covid vaccine mandate for its employees, including DOC employees.

77.     On or about November 9, 2021 Plaintiff returned to work from her medical leave.

78.     Upon reporting to work on or about November 9, 2021, Plaintiff underwent testing for the COVID virus, and upon submitting a negative PCR test result was permitted to resume performing the duties she previously performed as Captain-Supervisor/Tour Commander in the HMD before her medical leave of absence.

79.     From on or about November 9, 2021 until January 2, 2022, when the City placed Plaintiff on Leave Without Pay, Plaintiff underwent weekly testing for the COVID virus, and submitted weekly negative PCR test results.

80.     On November 10, 2022, two days after Plaintiff returned to work on restricted duty, and one day after the City issued the Teletype Order, regarding the weekly testing accommodation from the vaccine mandate, the City informed Plaintiff that they denied her request for a religious accommodation from the COVID vaccine mandate.

81.     The City stated they could not offer Plaintiff **any** accommodation or exemption from the COVID vaccine mandate.

82.     The City further stated that providing Plaintiff with **any** accommodation or exemption from the COVID vaccine mandate, would allegedly cause the DOC "undue hardship."

83.     In the City's form denial letter directed to Plaintiff, the City did not address or attempt to address Plaintiffs particular circumstances.

84.     In the form denial letter addressed to Plaintiff, the City did not consider or address  Plaintiff's duties, assignments, or lack of contact with inmates and the public.

85.     Plaintiff was willing and remained willing to undergo the weekly COVID testing and submit weekly PCR testing results described in Teletype Order, as an accommodation for her religion and religious beliefs.

86.     The City refused to engage in the interactive process with Plaintiff, failing to

meet with Plaintiff or to discuss with Plaintiff her request for a religious accommodation, and the available weekly testing accommodation.

87.     The City denied Plaintiff's request for a religious accommodation from the COVID vaccine mandate, despite the fact that there was available at least one reasonable accommodation that they admitted would not cause them undue hardship.

88.     On or about November 16, 2021 Plaintiff appealed the denial of her request for a religious accommodation, by personally delivering the appeal documents to the DOC's EEO Office.

89.     On November 16, 2021 Plaintiff received an email from Defendant Salesforce, stating that on behalf of "NYC Employee Vaccine Appeals," it was acknowledging receipt of her appeal, and was allegedly undertaking a review of that appeal.

90.     Based on the foregoing communication from Defendant Salesforce with respect to Plaintiff's appeal, and the subsequent actions of Defendant Salesforce with respect to said appeal, the City had delegated to Defendant Salesforce their authority and responsibility to determine whether Plaintiff should be granted an exemption from the vaccine mandate, based on her religious beliefs.

91.     The City delegated to Defendant Salesforce its authority and responsibility to review and determine the appeal of all DOC employees, whose request for an exemption or accommodation from the vaccine mandate had been denied.

92.     Pursuant to foregoing delegation of authority, Defendant Salesforce reviewed

16

and determined the appeal of all City of New York employees, including employees of

DOC, whose request for an exemption or accommodation from the vaccine mandate had

been denied.

93.     The actions of Defendant Salesforce in purportedly reviewing and thereafter

rendering a decision on Plaintiff's appeal was done at the behest, with the consent, full

knowledge, acquiescence and approval of the City.

94.     Like the City, Defendant Salesforce also failed to engage in the interactive

process with Plaintiff regarding her appeal, failing to meet with, discuss with or otherwise

communicate with Plaintiff regarding said appeal.

95.     Defendant Salesforce's interaction with Plaintiff was limited to transmitting

an email acknowledging receipt of her appeal and thereafter transmitting another email

summarily denying her appeal.

96.     Defendant Salesforce knew or should have known that there existed at least

one reasonable accommodation involving the weekly testing and weekly submission of

negative PCR test results, which did not and would cause the DOC undue hardship.

97.     Salesforce knew or should have known that Plaintiff was willing to undergo

and had undergone the weekly COVID testing, was willing to submit and had been

submitting negative PCR test results, since her return to work on restricted duty on or about

November 8, 2022.

98.     Despite its knowledge of Plaintiff's circumstances and the existence of the

reasonable accommodation, Defendant Salesforce failed to offer it to Plaintiff and instead summarily denied her appeal.

99.     At approximately 6:47 p.m. on Sunday, December 19, 2021 Plaintiff received an email from Defendant Salesforce, stating that the "decision classification" for her appeal was "Does Not Meet Criteria."

100.    Defendant Salesforce did not inform Plaintiff what it meant by "decision classification" what "Criteria" her appeal did not allegedly "Meet" or otherwise provide an explanation for its denial of Plaintiff's appeal.

101.    Defendant Salesforce then demanded that Plaintiff obtain the COVID vaccine and submit by Tuesday December 22, 2021 proof of the vaccination.

102.    Defendant Salesforce further threatened Plaintiff that she would be placed on Leave Without Pay if she did not comply with the mandate to obtain the COVID vaccine.

103.    In observation of her religion and religious beliefs, Plaintiff did not obtain the COVID vaccine.

104.    Thereafter, the City affirmed and adopted the decision of Defendant Salesforce, which denied Plaintiff's appeal.

105.    Thereafter, the City affirmed and adopted the decision of Defendant Salesforce, that Plaintiff should be placed on Leave Without Pay until she obtained the COVID vaccination.

106.    Effective January 2, 2022 the City placed Plaintiff on Leave

18

Without Pay.

107.    The City informed Plaintiff that she would remain on Leave Without Pay until she provided proof that she had obtained the COVID vaccine.

108.    As a result of being placed on Leave Without Pay, Plaintiff lost her income and benefits, including the reduction of her retirement benefits by the period during which she remained on leave.

109.    During Plaintiff's employment with the City, the City's and Defendant Salesforce's purported review of Plaintiff's requests and the requests of other DOC employees for a religious accommodation, the purported review of the appeals of those employees of the decision denying their requests,  resulted in the denial and refusal to grant Plaintiff's requests and the requests all other such DOC employees, for a religious accommodation from the COVID vaccine mandate.

110.    The City admitted that during Plaintiffs' employment with the City, that the City and Salesforce, denied all such requests for a religious accommodation from the vaccine mandate, placing the requesting DOC employees, on Leave Without Pay and subsequently terminating their employment.

111.    During Plaintiff's employment with the City, the City and Defendant Salesforce review of DOC employees' requests for a medical accommodation from the vaccine mandate, resulted in their granting each and every such medical accommodation request, permitting said unvaccinated DOC employees to continue their employment with

DOC, unencumbered by the vaccine mandate.

112.    The City admitted that they and Salesforce granted each and every such requests for a medical accommodation from the COVID vaccine mandate, permitting said unvaccinated DOC employees to continue performing their duties, which involved direct contact with the inmate population and the public.

113.    During Plaintiff's tenure with the City, Defendant Salesforce failed and refused to grant any requests for religious accommodations submitted by DOC employees.

114.    During Plaintiff's tenure with the City, the Defendant Salesforce did not deny one single request of a DOC employee for a medical accommodation from the vaccine mandate.

115.    Defendant Salesforce engaged in the foregoing conduct and subjected Plaintiff to the foregoing treatment because of its discriminatory animus directed against her on account of her religion and religious beliefs.

116.    Effective February 10, 2023 less than a year after the City placed Plaintiff on Leave Without Pay, the City of New York rescinded the mandate that required their employees, including DOC employees to obtain the COVID vaccine.

117.    In or about February 2023 the City of New York announced that employees such as Plaintiff, whom they had fired because said employees had not obtained the COVID vaccine could reapply for entry level positions with the City of New York, including DOC.

118.    Under the foregoing announced policy of the City of New York, the City required former employees such as Plaintiff, whose religious accommodations they denied, to start at the bottom of the employment ladder, robbing Plaintiff of the compensation, benefits, position and seniority status she earned during her almost two decades of service to the City.

119.    As a result of the wrongful conduct of Defendant Salesforce, Plaintiff has among other things, been deprived and continues to be deprived of the benefits and compensation she would be entitled to receive as a DOC employee holding the position of Captain.

120.    Despite reasonable efforts, Plaintiff has not been able to find employment comparable to the one she held prior to her termination by Defendants.

<u>COUNT I</u>

121.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 120  of this Complaint, with the same force and effect as if set forth herein.

122.    Defendant Salesforce discriminated against Plaintiff in the terms and conditions of her employment and  subjected her to disparate treatment on the basis on her religion and  religious belief, in violation of 42 U.S.C. §§ 2000e *et seq*.

123.    As a proximate result of Defendant's religious discrimination, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other employment benefits.

124.    As a proximate result of Defendant's religious discrimination, Plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation.

125.    As a proximate result of Defendant's religious discrimination, Plaintiff has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

126.    The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's  protected civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT II

127.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 120  of this Complaint, with the same force and effect as if set forth herein

128.    Defendant Salesforce, under color of state law, subjected Plaintiff to discriminatory treatment, because of its discriminatory animus directed against Plaintiff on account of her religion and religious beliefs.

129.    As a result of Defendant's discriminatory conduct,  Defendant denied Plaintiff the equal protection of the law, and the full and equal benefits of all laws and proceedings for the security of her employment, because of her religion and religious beliefs, in violation of the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983.

130.    As a proximate result of Defendant's actions, Plaintiff suffered and continues to suffer substantial losses, including the loss of past and future earnings, employment

opportunities, and other employment benefits.

131.    As a proximate result of Defendant's actions, Plaintiff suffered and continues to suffer impairment and damage to her  good name and reputation.

132.    As a proximate result of Defendant's actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

133.    The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling Plaintiff to an award of punitive damages.

<u>COUNT III</u>

134.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 120 of this Complaint, with the same force and effect as if set forth herein.

135.    Defendant subjected Plaintiff to disparate treatment, based on her religion and religious beliefs, in violation of NYSHRL.

136.    As a result of the foregoing, Plaintiff has been denied employment.  Plaintiff has lost wages, benefits, employment and promotional opportunities.  Plaintiff has suffered mental anguish, emotional distress and loss of enjoyment of life. Plaintiff has incurred damages thereby.

137.    The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling

Plaintiff to an award of punitive damages.

COUNT IV

138.   Plaintiff  repeats and realleges each and every allegation set forth in paragraphs 1 through 120 of this Complaint, with the same force and effect as if set forth herein.

139.   Defendant subjected Plaintiff to disparate treatment based on Plaintiff's religion and religious beliefs, in violation of the NYCHRL.

140.   As a result of the foregoing, Plaintiff has been denied employment.  Plaintiff has lost wages, benefits, employment and promotional opportunities.  Plaintiff suffered mental anguish, emotional distress and loss of enjoyment of life. Plaintiff incurred damages thereby.

141.   The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling Plaintiff to an award of punitive damages.


WHEREFORE, Plaintiff prays that this Court grant her judgment containing the following relief:

1.   A declaration that the acts and practices complained of herein are in violation of 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. §1983,  NY Exec. L. §§ 290 *et seq*., and NYC Admin. Code §§ 8-101 *et seq*.

2.      An order prohibiting Defendant from continuing or maintaining the policy, practice and/or custom of denying job benefits and opportunities to employees on the basis of religion and religious beliefs.

3.      An award to Plaintiff of actual damages in an amount to be determined at trial for loss wages, benefits and promotional opportunities, including an award of front pay, compensating Plaintiff for loss of future salary and benefits.

4.      An award of damages in an amount to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury.

5.      An award of punitive damages in an amount to be determined at trial.

6.      An order enjoining Defendant from engaging the wrongful acts and practices complained of herein.

7.      An award of pre-judgment and post-judgment interest.

8.      An award of reasonable attorney's fees and costs of this action.

9.      An award of such other and further relief, as this Court may deem just and proper.

Pursuant to Fed. R. Civ. Proc. 38, Plaintiff demands a trial by jury of all issues of fact

in this action.

Dated:       New York, New York
             December 22, 2023


                              LAW OFFICE OF SANDRA D. PARKER

                              By:/s/ Sandra D. Parker_____
                                  Sandra D. Parker
                                  110 East 59th Street, 22nd Floor
                                  New York, NY 10022
                                  212-317-2883
                                  Attorney for Plaintiff
                                  parkefirm@aol.com